Provens, Appellant, *v.* Stark County Board of Mental
Retardation & Developmental Disabilities, Appellee.

[Cite as *Provens v. Stark Cty. Bd. of Mental Retardation &
Developmental Disabilities* (1992), 64 Ohio St.3d 252.]

(No. 91–1412—Submitted May 12, 1992—Decided July 29, 1992.)

254

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Ronald G. Macala* and *Randall Vehar,* for appellant.

*Day, Ketterer, Raley, Wright & Rybolt, J. Sean Keenan* and *Jill Freshley Otto,* for appellee.

---

HOLMES, J. The plaintiff-appellant's complaint alleged a violation of her state constitutional rights. Although she did not specify in her complaint what rights were allegedly violated, the thrust of the allegations indicate that Section 11, Article I of the Ohio Constitution was the major basis of plaintiff's claims. This section provides:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. * * *"

This constitutional provision does not set forth an accompanying cause of action for a violation of the right of free speech. And, parenthetically, no other constitutional provision relied upon by the appellant provides an individual cause of action for an alleged violation of such constitutional right. Additionally, the Ohio General Assembly has not authorized such an action. Further, this court has never pronounced it to be the common law of this state that a public employee has a private cause of action against her employer to redress alleged violations by her employer of policies embodied in Ohio's Constitution. This is precisely the new common law the appellant seeks this court to pronounce, even if other administrative remedies (adequate or inadequate) might also be available. Appellant argues that any such alternative remedies only supplement, and do not replace, a plaintiff's right to bring a civil action to enforce constitutional rights.

In resolving the issues presented, we must be mindful of some general principles regarding the exercise of judicial discretion. When rights are invaded or violated, the law generally provides a remedy. When rights are not expressly provided by statutory law, courts may in given instances fill the void, looking to any legislative policy or statutory scheme within the area of concern. Even though this court is empowered to grant relief not expressly provided by the legislature, and may grant relief by creating a new remedy, we shall refrain from doing so where other statutory provisions and administrative procedures provide meaningful remedies.

The United States Supreme Court has addressed its judicial role in the type of case presently before us on a number of occasions. One of the more recent cases is that of *Bush v. Lucas* (1983), 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648, where the court considered whether a private claim for damages could be stated by a federal employee for an alleged violation of his First Amendment rights. In *Bush*, the plaintiff, a federal aerospace engineer, filed a complaint against his employer, the George C. Marshall Space Flight Center, to recover for alleged defamation and retaliatory demotion. He alleged that his demotion was the result of his having made statements to the news media which were highly critical of the center.

Justice Stevens, writing for the court, assumed for purposes of the court's decision that the federal employee's First Amendment rights had been violated by adverse personnel action. The court also assumed that the civil service remedies available to him were not as effective as a tort-damages remedy and would not fully compensate him for the harm he had allegedly suffered. Additionally, the court acknowledged that Congress had not expressly authorized the damages remedy sought by the petitioner, nor had Congress expressly precluded the creation of such remedy. The court then proceeded to review

all the factors relevant to the petitioner's claim that a right of private action should be made available for the violation of his constitutional rights. In this regard the court observed:

"Given the history of the development of civil service remedies and the comprehensive nature of the remedies currently available, it is clear that the question we confront today is quite different from the typical remedial issue confronted by a common-law court. The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. * * * " 462 U.S. at 388, 103 S.Ct. at 2416–2417, 76 L.Ed.2d at 664.

The *Bush* court in essence concluded that it must make a remedial determination, paying particular heed to any special factors counseling hesitation before authorizing a new remedy. Accordingly, the court stated that:

"Petitioner asks us to authorize a new nonstatutory damages remedy for federal employees whose First Amendment rights are violated by their superiors. Because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." 462 U.S. at 368, 103 S.Ct. at 2406, 76 L.Ed.2d at 651.

The United States Supreme Court has generally exercised extreme caution in reviewing cases asserting a "constitutional tort" theory cause of action. Such actions have been held viable against federal officials for a violation of Fourth Amendment rights (an illegal search and seizure by federal narcotics agents), *Bivens v. Six Unknown Fed. Narcotics Agents* (1971), 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619; for a violation of Fifth Amendment rights (sex discrimination against a congressional employee), *Davis v. Passman* (1979), 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846; and for a violation of Eighth Amendment rights (failure to provide proper medical attention to a federal inmate), *Carlson v. Green* (1980), 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15. In all these cases, sometimes referred to as *"Bivens* actions," the Supreme Court found no "special factors counselling hesitation in the absence of affirmative action by Congress," *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2005, 29 L.Ed.2d at 626; no explicit statutory prohibition against the relief sought, and no exclusive statutory alternative remedy, *Davis*, 442 U.S. at 246–247, 99 S.Ct. at 2278, 60 L.Ed.2d at 863; *Carlson*, 446 U.S. at 18–20, 100 S.Ct. at 1471–1472, 64 L.Ed.2d at 23–25.

Various state courts presented with the legal issue of the validity of an individual's cause of action for damages for an alleged violation of constitutionally protected rights have followed the rationale of the *Bush* decision. The plaintiff in *Walt v. State* (Alaska 1988), 751 P.2d 1345, for example, was a state employee subject to the General Governmental Unit Collective Bargaining Agreement. Plaintiff, a development specialist for the Department of Commerce and Economic Development, was discharged as a result of remarks made at a conference at which the plaintiff represented that department. The plaintiff pursued a grievance through his collective bargaining representative, and was ultimately ordered reinstated. Although the grievant was returned to work, a decision was soon made to eliminate funding for his position.

The plaintiff in *Walt* initiated legal action against the state and against several of his superiors at the department, asserting, *inter alia*, a claim under Section 1983, Title 42, U.S.Code for violation of his free speech and substantive due process rights, a claim for a violation of state statutory and personnel rules (based on an adverse employment action not related to merit), a tort claim for negligent and intentional infliction of emotional distress, and a public policy tort based on alleged retaliatory elimination of funding for his position. Summary judgment in favor of the state was entered by the trial court and ultimately upheld by the Supreme Court of Alaska.

Of particular relevance to the instant case was the Alaska Supreme Court's disposition of plaintiff's tort claim implied from a violation of public policy. The court cited the United States Supreme Court decision in *Bush*, noting that the court in that case found a cause of action should not be implied for violations of the First Amendment rights of a federal employee because of the comprehensive civil service remedies provided by Congress. The court in *Walt* held:

"We think *Bush* is analogous to the instant case. Here elaborate provisions were made available to Walt under the provisions of the CBA [Collective Bargaining Agreement], PERA [Public Employment Relations Act], and, to the extent applicable, the provisions of Alaska's State Personnel Act and Personnel Rules. Taken together the foregoing provide a comprehensive scheme of employee rights and remedies. Recognition of an independent tort for violation of public policy would in our view conflict with the established law of public employee-employer labor relations in Alaska." *Id.* at 1353, fn. 16.

See, also, *Melley v. Gillette Corp.* (1985), 19 Mass.App. 511, 475 N.E.2d 1227; *Makovi v. Sherwin–Williams Co.* (1989), 316 Md. 603, 561 A.2d 179; *Cox v. United Technologies, Essex Group, Inc.* (1986), 240 Kan. 95, 727 P.2d 456; and *Phillips v. Babcock & Wilcox* (1986), 349 Pa.Super. 351, 503 A.2d 36.

Appellant argues that the *Bush* rationale should not be applied to this case because the alternative remedies available to the plaintiff are not adequate and meaningful, and in any event the remedy she seeks should be in addition to other remedies provided by statute.

In reviewing the Ohio statutory law which could provide the plaintiff redress for her complaints, we look to R.C. Chapter 4112, creating the Civil Rights Commission ("CRC"), R.C. Chapter 4117, establishing the State Employment Relations Board ("SERB"), and R.C. Chapter 124, providing for the State Personnel Board of Review ("SPBR"). The latter chapter dealing with the SPBR provides little remedy for the plaintiff since she is employed pursuant to a collective bargaining agreement, and since R.C. 4117.10(A) divests the SPBR of jurisdiction where such an agreement exists.

However, R.C. Chapter 4112 does provide the plaintiff with some meaningful available relief. R.C. 4112.02 provides that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, natural origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

After complaint and hearing, if the commission finds that the respondent has engaged in any unlawful discriminatory practice, the commission "shall issue and, subject to the provisions of Chapter 119. of the Revised Code, cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such further affirmative or other action as will effectuate the purposes of sections 4112.01 to 4112.08 of the Revised Code, including, but not limited to, hiring, reinstatement, or upgrading of employees with, or without, back pay * * *." R.C. 4112.05(G).

As further remedy for a person claiming civil rights violations, R.C. 4112.-06(A) provides that "[a]ny complainant, or respondent claiming to be aggrieved by a final order of the commission, including a refusal to issue a complaint, may obtain judicial review thereof, and the commission may obtain an order of the court for the enforcement of its final orders * * *."

The record before the trial court shows that the plaintiff had filed four complaints with the CRC against the defendant board. The first was filed on March 1, 1986, charging that:

"I. I am a Black person. Since Oct. 28, 1985, I have been constantly harassed in all aspects of my job. On Feb. 7, 1986, I was physically assaulted by my Supervisor, Sue Givens.

"II.  Sue Givens, Caucasian Supervisor and Assistant Principal, refuses to meet with me to resolve accusations made against me.

"III.  I believe I have been unlawfully discriminated against due to my race, Black, because (a) * * * I am the only Black teacher."

The second complaint filed by the plaintiff in the CRC was dated May 8, 1986.  The complaint primarily charged unlawful discrimination because of the plaintiff's race, and specifically charged that she was being harassed because of her race and being treated unfairly, i.e., Caucasian teachers were not similarly treated.

The third complaint was filed on September 26, 1986, and charged that the plaintiff was retaliated against because she had filed the complaints against the board.

The fourth complaint, filed on April 17, 1989, again charged that plaintiff was being discriminated against because of her race, and more specifically that she had been suspended for three days by her director.  Plaintiff stated that "I believe that my handicap [depression] and race was [sic] the determining factors in his decision to suspend me and that all other reasons are pretextual."

In reviewing the instant record, it may be reasonably concluded that a significant basis for the allegations contained in plaintiff's complaint were harassment claims with racial connotations.  Therefore, we conclude that the plaintiff could, and did, pursue some of her available remedies through R.C. Chapter 4112 for the claimed unlawful activities of her employer.

The plaintiff, as a public employee, also has remedies available for bringing charges and grievances against her employer through the provisions of R.C. Chapter 4117, the Public Employees' Bargaining Act, and SERB.  First, this chapter grants public employees the specific right to join, or not to join, any employee organization of their own choosing (R.C. 4117.03[A][1]), and authorizes representation by such employee organization (R.C. 4117.03[A][3]), collective bargaining for wages, hours, terms and other conditions of employment, and entering into collective bargaining agreements (R.C. 4117.03[A][4]), such as the one entered into here by the defendant board and the plaintiff's employee representative organization, Stark County Educators' Association for the Training of Retarded Persons.

After negotiations between the plaintiff's employee bargaining organization and the board, a collective bargaining agreement was entered into, which at Article XXIII provides for a "Grievance Procedure," whereby a member of the bargaining unit may allege that there has been a breach, misinterpretation, or improper application of the agreement.

Plaintiff's civil action here, in addition to having some civil rights aspects, is a result of her complaints concerning allegedly unfair treatment with respect to such items as the discipline taken against her by her employer, the suitability of her job-related physical facilities, the availability of equipment, job performance evaluations, the requirement of medical verification for sick leave, and the content of her employee personnel file. Clearly, all these subjects are treated by the collective bargaining agreement.[3] In her deposition testimony, the plaintiff acknowledged that she had filed a number of grievances under the collective bargaining agreement during the course of her employment and that she had prevailed only in some of these grievances. So we may reasonably conclude that most of these employment-related complaints may be covered by the grievance procedures that are set forth within the collective bargaining agreement.

While the remedies provided the plaintiff here through the administrative process of a hearing before the CRC and through the arbitration process under the collective bargaining agreement do vary from the remedies that might be available through a civil proceeding, such difference shall not be controlling where, in the totality, it may be concluded that the public employee has been provided sufficiently fair and comprehensive remedies. In *Bush*, the United States Supreme Court clearly evidenced that alternative avenues providing a less than complete remedy for the wrong suffered were not sufficient to warrant the recognition of a cause of action for damages arising from a constitutional violation. 462 U.S. at 388, 103 S.Ct. at 2417, 76 L.Ed.2d at 664.

The United States Supreme Court in *Bush* found that the question whether to augment a remedial scheme carefully constructed by Congress did not turn merely on a determination that existing remedies failed to provide complete relief. Instead, the court asserted that the decision to create a *Bivens*-style remedy in those circumstances turned on a careful evaluation of relevant policy considerations. The court gave special deference to Congress' ability to weigh the policy considerations relevant to a determination of whether to create a remedy for a harm suffered, and, in the end, deferred to Congress' superior expertise, "convinced that Congress [was] in a better position to decide whether or not the public interest would be served by creating" a

---

3. See, *e.g.*, Section 2, Article XI, "Corrective Action" (providing that "[n]o employee shall be reduced in pay, * * * suspended, discharged or removed except for just cause" and that "no other form of disciplinary action will be taken against any employee except for just cause"); Section 3, Article XI, "Facilities"; Article XII, "Evaluation Procedure"; Article XIII, "Personnel Files" (granting employees the opportunity to review personnel files and to submit memoranda in rebuttal to any article included in the file with which the employee takes exception); and Section 1, Article XVI, "Staff Absences"—"Reporting Off Sick."

*Bivens*-style remedy in the case. *Bush,* 462 U.S. at 390, 103 S.Ct. at 2417, 76 L.Ed.2d at 665.

In like manner, it is not incumbent upon this court to engage in the type of comparative analysis of the relative merits of various remedies that is invited by appellant. Rather, the more appropriate course for this court is to defer to the legislative process of weighing conflicting policy considerations and creating certain administrative bodies and processes for providing remedies for public employees such as appellant.

We hold, therefore, that public employees do not have a private cause of civil action against their employer to redress alleged violations by their employer of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process.

Finally, the appellant argues that the lower court here should be reversed upon the authority of *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, wherein this court recognized a cause of action for wrongful discharge in violation of public policy. However, the issue presented in *Greeley* is not directly on point with the issue presented here. The narrow issue in that case was whether an employee discharged in violation of R.C. 3113.213(D), prohibiting an employer from discharging or disciplining an employee on the basis of a wage withholding order, could maintain a wrongful discharge action where the statute did not expressly authorize such an action. The court limited its holding to a public policy enunciated in a statute, and not the Ohio Constitution. Reasoning that the legislature could not have intended to leave an employee discharged in violation of such a statute without an effective remedy, a majority of this court held "that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." 49 Ohio St.3d at 234, 551 N.E.2d at 986.

The facts and issues in *Greeley* are distinctly dissimilar from those presented in this case, and are accordingly not controlling.

Concluding, we hold that the courts below properly decided that there was no private constitutional remedy for the plaintiff-appellant's claims in that the Ohio Constitution itself does not provide for a civil damage remedy. Further, in that there are rather extensive legislative and regulatory schemes providing for the bringing of complaints and charges emanating from civil rights violations, and legislative and regulatory schemes governing employment relationships, and in this regard, the presence here of a collective bargaining agreement with grievance procedures, the plaintiff has sufficiently broad and inclusive remedies for her alleged wrongs.

For all the above reasons, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, WRIGHT and H. BROWN, JJ., concur.

RESNICK, J., concurs in the syllabus and judgment.

DOUGLAS, J., concurs in judgment only.

DOUGLAS, J., concurring in judgment only. I concur in the judgment of the majority. Appellant is a member of a bargaining unit with a valid enforceable collective bargaining agreement in place. Article XXIII of the agreement provides for a grievance procedure. An employee has no more right to ignore a collective bargaining agreement than does an employer. I would affirm the judgment of the court of appeals on that basis.