**James G. JACKSON, Plaintiff–Appellant,**

v.

**CITY OF COLUMBUS, Gregory Lashutka, Thomas W. Rice, Sr., Defendants–Appellees.**

Nos. 98–3969, 98–4010.

United States Court of Appeals, Sixth Circuit.

Argued: Aug. 5, 1999.

Decided: Sept. 30, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 17, 1999.

William C. Wilkinson (briefed), Paul Giorgianni, Scott A. Campbell (argued and briefed), Charles E. Ticknor (briefed), Thompson, Hine & Flory, Benson A. Wolman (briefed), Susan B. Gellman (briefed), Wolman, Genshaft & Gellman (briefed), Columbus, OH, for Plaintiff–Appellant.

Glenn B. Redick (briefed), Columbus City Attorney's Office, Civil Division, Columbus, OH, for Defendant–Appellee City of Columbus.

John R. Gall (briefed), Philomena M. Dane (argued and briefed), Jeffrey A. Yeager, Squire, Sanders & Dempsey, Columbus, OH, for Defendant–Appellee Gregory Lashutka.

Bradd N. Siegel (briefed), Kathleen M. Trafford (briefed), James A. King (briefed), Constance M. Greaney (briefed), Porter, Wright, Morris & Arthur, Columbus, OH, for Defendant–Appellee Thomas W. Rice, Sr.

Before: JONES, SILER, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

James G. Jackson, the Chief of Police of Columbus, Ohio, filed suit against the City of Columbus, Mayor Gregory S. Lashutka, and Director of Public Safety Thomas W. Rice, Sr. (collectively referred to as "the City"), claiming that the City had deprived

him of various constitutional rights during the course of an investigation into his allegedly improper conduct as Chief of Police. The district court granted the City's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as to all of Jackson's claims, except his state-based claim of defamation, over which it declined to exercise supplemental jurisdiction. For the reasons stated below, we **REVERSE** the district court's dismissal of Jackson's First Amendment freedom of speech claim and **REMAND** such claim, as well as his claim of defamation under state law, for further proceedings consistent with this opinion. We **AFFIRM** the district court's dismissal of all of his other claims.

## I. BACKGROUND

This case involves a dispute between Columbus's Chief of Police and the City. Jackson, the first African–American Chief of Police in Columbus, was investigated by the City in the fall of 1996 for his allegedly improper conduct in office. On October 10, 1996, Jackson was informed by a letter from Rice that he was being reassigned to his residence pending the mayoral investigation. This letter also informed Jackson that he was not to make any comments to the media regarding the investigation while it was pending and that he was not to enter his office or any other city facilities during that time. Following this reassignment, Jackson's office was searched and Deputy Chief Kern, a white officer, was appointed by Rice as the Acting Chief of Police.

Four days later, after being advised by the City Attorney that Jackson's reassignment could be construed as a suspension, a clarification letter was sent by Rice, informing Jackson that he was to perform all of his duties as Chief of Police at the administrative offices of the Columbus Division of Fire. Jackson was also told not to make any personnel changes within the Division of Police or to enter any police facility without Rice's prior approval.

Rather than report to the Division of Fire to perform his duties as Chief of Police, Jackson elected to use his accrued vacation time. The City, however, did not require Jackson to forfeit any pay or benefits during this period of time.

On November 29, 1996, Jackson was formally suspended (with continuing pay and benefits) for alleged incompetence and gross neglect of duty in violation of the laws of the state of Ohio, the City of Columbus, and the rules of the Columbus Division of Police. Certain charges were then referred to the Columbus Municipal Civil Service Commission for review, alleging that Jackson had failed to fairly discipline a commander within his department, failed to efficiently manage the operations of the vice bureau, failed to maintain police records in a homicide investigation, failed to protect the integrity of the police department, and had used his position to influence hiring decisions for friends and family. On December 30, 1996, the Commission rendered a decision finding that two of the charges had been proven—namely, that he had failed to properly discipline a commander within his department and that he had destroyed police records in a homicide investigation. The Commission imposed a sanction of a five-day suspension without pay or the forfeiture of five vacation days on these two charges. Jackson has not challenged the November 29, 1996 suspension or the December 30, 1996 decision of the Commission.

On July 1, 1997, Rice published a draft investigative report regarding the results of the investigation. According to Jackson, the report contained "false and defamatory statements."

Based on the October 10, 1996 reassignment letter, the gag order, the banishment order, and the 1997 publication of the investigative report, Jackson filed suit in the United States District Court for the Southern District of Ohio. He alleged causes of action based on the following federal claims: (1) First Amendment freedom of

speech, (2) First Amendment right to petition, (3) procedural due process under the Fourteenth Amendment, (4) substantive due process under the Fourteenth Amendment, (5) racial discrimination in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment, (6) conspiracy in violation of 42 U.S.C. § 1985, and (7) retaliation in violation of 42 U.S.C. § 1983.

Jackson also alleged causes of action based on the following state claims: (1) various violations of the Ohio Constitution, (2) intentional infliction of emotional distress, (3) invasion of privacy, (4) racial discrimination and retaliation in violation of Ohio Revised Code Ch. 4112, and (5) defamation. Finally, he sought a declaration that the 1997 investigative report was illegal and requested an injunction ordering its expungement from the City's records.

The district court granted the City's Rule 12(b)(6) motion to dismiss all of Jackson's claims for failure to state a claim upon which relief could be granted, except for his state claim of defamation. As to the defamation claim, the district court declined to exercise supplemental jurisdiction, and thus dismissed it without prejudice. Jackson has timely appealed.

## II. ANALYSIS

### A. Standard of review

A district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed *de novo.* *See Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998). "The court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Id.* "Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (internal quotation marks omitted).

■ In support of his challenge to the district court's ruling, Jackson repeatedly

claims that the court did not adequately consider the facts as alleged in his complaint. A court is not required, however, to accept a plaintiff's summary allegations or unwarranted legal conclusions in ruling on a motion to dismiss. *See Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir.1996).

### B. Consideration of exhibits

■ In making its ruling, the district court considered certain exhibits attached to Rice's motion to dismiss. As stated by the district court, "as a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R.Civ.P. 56." *See Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir.1997). There are, however, exceptions to this general rule. Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See id.* at 89. Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies. *See, e.g., Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997) (public records); *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1018 (5th Cir.1996) (judicial notice); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1197 (3d Cir. 1993) (letter decisions of governmental agencies).

■ On appeal, Jackson specifically argues that the district court improperly considered a December 30, 1996 decision rendered by the Civil Service Commission and documents from Jackson's state court mandamus case. The December 30, 1996 decision of the Civil Service Commission, however, was a matter of public record and was referred to in Jackson's complaint. The documents from Jackson's state court mandamus case were also public records in a related case. Both of these

documents were therefore properly considered by the district court.

## C. Federal claims

### 1. First Amendment freedom of speech

Jackson claims that the City violated his First Amendment right to freedom of speech by imposing the gag order. Under the gag order, Jackson was forbidden to speak with the news media about the investigation into his alleged misconduct while the investigation was pending. The district court held that this was a matter of private concern and thus did not fall within the First Amendment's protection. Alternatively, the district court concluded that even if this issue was a matter of public concern, the City's interest in promoting the efficiency of its public services outweighed Jackson's·interests in uninhibited speech.

■■ The Supreme Court has recognized that "the state has interests as an employer in regulating the speech of its employees." *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 . S.Ct. 1731, 20 L.Ed.2d 811 (1968). In determining if restrictions on an employee's speech violate the First Amendment, a court must first decide whether the speech at issue can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If not, there is generally no First Amendment violation. *See id.* On the other hand, if the court determines that the speech does involve a matter of public concern, then the court must consider whether the interest of the employee, as a citizen, in commenting on matters of public concern outweighs the interest of the state, as an employer, in promoting the efficiency of the public services it performs. *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731.

### a. Public versus private concern

■ In order for a public employee to maintain a First Amendment claim against his ·employer, the employee must allege that he or she was seeking to exercise First Amendment rights with respect to a matter of public concern. *See Connick,* 461 U.S. at 146, 103 S.Ct. 1684. A matter of public concern generally involves a matter of political, social, or other concern to the community. *See Jackson v. Leighton,* 168 F.3d 903, 909 (6th Cir.1999) (holding that a physician-employee's comments relating to a proposed merger between his employer-medical college and a hospital addressed a matter of public concern, but that his interest in speaking on this issue was outweighed by the interest of the college and its administrators). "Federal courts. normally do not review personnel decisions reacting to an employee's behavior 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest.'" *Id.* (quoting *Connick,* 461 U.S. at 147, 103 S.Ct. 1684).

■ Determining whether speech involves a matter of public or private concern must be based on the "content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684. The fact that an employee alleges discrimination on the part óf a public employer is not itself sufficient to transform the dispute into a matter of public concern. *See Rice v. Ohio Dep't of Transp.,* 887 F.2d 716, 721 (6th Cir.1989) ("[T]he First Amendment does not convert every public employee grievance into a matter of ·public concern . . . ."), *rev'd on other grounds,* 497 U.S. 1001, 110 · S.Ct. 3232, 111 L.Ed.2d 744 (1990). If in fact Jackson's restricted speech was solely a matter of private concern, we would thus not engage in an evaluation of the reasons for the City's restriction. *See Jackson,* 168 F.3d at 910.

Whether Jackson's restricted speech in this case involves a matter of private or public concern is a close question. We need not decide this issue, however, because the question before us is simply whether Jackson has sufficiently alleged

that he was restricted from speaking about matters of public concern. If he has, then we must assume such to be true for the purpose of evaluating the City's motion to dismiss under Rule 12(b)(6).

We hold that, in considering the complaint as a whole, Jackson has sufficiently alleged that his restricted speech was a matter of public concern. Jackson is not an ordinary employee, but rather is a high-profile member of the Columbus community. Because the investigation involved allegations of corruption and abuse of power within the Division of Police, as well as the City's allegedly racial motivations, the gag order could be construed as covering more than a private employment dispute. Such social and political issues are generally matters of public concern. *See Tao v. Freeh,* 27 F.3d 635, 640 (D.C.Cir.1994) ("A statement concerning racial discrimination on the part of a public agency is a matter of public concern because it involves information that enables members of society to make informed decisions about the operation of their government.") (internal quotation marks omitted); *Solomon v. Royal Oak Township,* 842 F.2d 862, 865 (6th Cir.1988) ("[S]peech disclosing public corruption is a matter of public interest and therefore deserves constitutional protection.").

Furthermore, the fact that the gag order was only temporary does not bar Jackson's claim. The Supreme Court has stated that "the burden on the [party seeking the restraint] is not reduced by the temporary nature of a restraint." *Nebraska Press Assoc. v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *see also Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

b. *Pickering* balancing test

We also find that Jackson has sufficiently alleged that his interest in speaking outweighs the government's interest in restricting his speech. *See Pickering,* 391 U.S. at 568, 88 S.Ct. 1731. When Rice was asked the basis for the gag order, he stated that he was concerned that the issue of race would be raised, that it is a sensitive issue, and that it might "cause great concern within the black community." He failed, however, to cite to any specific reason to support his fear that such speech would disrupt the community. Without weighing these interests ourselves, we conclude that whether a general fear of racial tension justifies the prior restraint on Jackson's speech is a legal issue that the district court will have to decide on remand.

Finally, the district court held that Jackson's complaint was insufficient because he failed to allege what statements he would have made but for the gag order. In support of its holding, the district court cited *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale,* 922 F.2d 756 (11th Cir.1991). In *Hallandale,* the union representing city firefighters made a facial challenge under the First, Fifth, and Fourteenth Amendments to the city's policy establishing guidelines for criticism of supervisors and other officials by city employees. The Eleventh Circuit held that no case or controversy existed because the city's policy had not yet been enforced against any union members, the union had not alleged that its members desired to engage in any specific conduct, and it had not shown any harm that might occur. *See id.* at 761–62.

Unlike the petitioner in *Hallandale,* Jackson had a specific gag order directed at him personally, and a reasonable inference can be drawn that he would have spoken out about the investigation but for the gag order. *Hallandale* does not hold that the employee must specifically allege what he or she would have said but for the restriction in order to present a case or controversy. We thus find that *Hallan-*

*dale* does not support the district court's ruling on this issue.

### c. Defense of qualified immunity

██ Having concluded that Jackson's First Amendment freedom of speech claim states a cause of action, we must now consider the City's defense of qualified immunity. This court has held that qualified immunity can constitute a proper basis for dismissal based on the plaintiff's failure to state a claim upon which relief can be granted. *See Levin v. Childers,* 101 F.3d 44, 48 (6th Cir.1996). To overcome this defense, the plaintiff must allege a violation of a clearly established constitutional right, and that a reasonable official would have known that his or her conduct violated this right. *See Jackson v. Leighton,* 168 F.3d 903, 909 (6th Cir.1999).

██ There is no doubt that the right allegedly violated in this case, based on the freedom of speech protected by the First Amendment, is one of our most fundamental and established constitutional rights. Whether a reasonable official should have known that imposing a gag order on a high-ranking public official would violate this right in connection with an investigation about issues relating to public corruption by that official is not obvious as a matter of law. Because no discovery has yet taken place and the defense of qualified immunity is not clear cut, we find it inappropriate to resolve this issue at the present stage of the case. *See Black v. Coughlin,* 76 F.3d 72, 76 (2d Cir.1996) (stating that the defense of qualified immunity is not always appropriately decided as a matter of law); *Sutton v. United States,* 819 F.2d 1289, 1299 (5th Cir.1987) ("Trial courts ought not try to deal with [the defense of qualified immunity] on motions under F.R.Civ.P. 12(b), when the proper disposition of the case requires some factual development by the parties."); 2 JAMES MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[4][b] & n.56 (3d ed. 1998) ("Defenses that require a factual review to be established (as ordinarily occurs

with qualified immunity, for example) should not support a dismissal for failure to state a claim.").

In sum, we conclude that Jackson has alleged a set of facts that could entitle him to relief for the violation of his First Amendment right to freedom of speech. The district court's dismissal of this claim is therefore reversed and the issue remanded for further proceedings consistent with this opinion. Whether Jackson's claim will survive summary judgment or a trial is for the district court to determine on remand. *See Bloch v. Ribar,* 156 F.3d 673, 687 (6th Cir.1998) ("This is not to say that the [plaintiffs] will necessarily prevail at trial or that summary judgment will not be appropriate after discovery is completed. We are convinced, however, that the [plaintiffs] have the right to proceed to the next stage of the litigation.").

### 2. First Amendment right to petition

██ Jackson alleges that the October 10, 1996 letter from Rice that banned him from all city property resulted in an infringement of his right to petition the government for redress. "It is beyond dispute that the right to access to the courts is a fundamental right protected by the Constitution." *Swekel v. City of River Rouge,* 119 F.3d 1259, 1261 (6th Cir.1997) (internal quotation marks and citation omitted). This provision protects a person's right of physical access to the courts as well as to petition for redress at any department of the government, including state administrative agencies. *See id.*

The district court dismissed this claim, holding that because Jackson had adequate procedures available to challenge his employer's actions, he had failed to state a claim. This court's decision in *Gillard v. Norris,* 857 F.2d 1095 (6th Cir.1988), supports the district court's ruling. In *Gillard,* the petitioner was unable to seek relief from the Tennessee Civil Service Commission, but he was able to access both the state's Department of Corrections and the state's Department of Personnel.

This court held that because Gillard had adequate remedies, he was not impeded in exercising his right to petition for redress. *See id.* at 1101.

We are unable to distinguish *Gillard* from the instant case. There are no allegations that Jackson was hampered in obtaining access to either the state or federal courts. In fact, Jackson filed a mandamus action in state court requesting the court to order Jackson's reinstatement or, in the alternative, to order Rice to send the charges against Jackson to the Civil Service Commission. Moreover, although denied physical access to city buildings, he was able to speak with any city official at any other location.

For these reasons, we affirm the district court's dismissal of Jackson's right to petition claim.

### 3. *Fourteenth Amendment—procedural due process*

■ Jackson alleges that the October 10, 1996 reassignment letter, the gag order, and the banishment order were implemented without affording him procedural due process. The first step in determining whether procedural due process has been denied is to ask "whether there exists a liberty interest or property interest which has been interfered with" by the defendants. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). If the court determines that there has been such a deprivation, the remaining question is what process is due. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

#### a. Liberty or property interest

■ The district court in the instant case correctly stated that First Amendment rights may constitute a liberty interest under the Due Process Clause. *See Adkins v. Board of Educ. of Magoffin County, Ky.,* 982 F.2d 952, 955 (6th Cir. 1993) ("Although [the plaintiff] had no property right to continued employment she had a liberty interest in not being denied employment for exercising her First Amendment right[s].…"). Because we find that Jackson has stated a claim for a violation of his First Amendment right of freedom of speech with respect to the gag order, we hold that he has sufficiently alleged the deprivation of a liberty interest.

■ Jackson also argues that he has pled a constitutionally protected property interest with respect to his alleged suspension. He argues that his membership in the classified civil service gives rise to a property interest in his continued employment. In support of this claim, he cites *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), which held that public employees have a property interest in continued employment. The holding in *Loudermill,* however, only extended to the *termination* of public employees. Indeed, the Supreme Court stated in *Loudermill* that the suspension of a tenured public employee *with pay* would avoid due process problems entirely. *See Loudermill,* 470 U.S. at 544–55, 105 S.Ct. 1487; *see also Gilbert v. Homar,* 520 U.S. 924, 929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (expressly acknowledging that the Court has not decided whether the Due Process Clause extends to discipline of tenured public employees short of termination). *Boals v. Gray,* 775 F.2d 686 (6th Cir.1985), another case cited by Jackson, is also distinguishable because Boals's suspension was apparently without pay. Because Jackson was neither terminated nor lost any pay or benefits, we find that he was not deprived of a constitutionally protected property interest.

#### b. What process is due

■ Having concluded that Jackson has sufficiently alleged a deprivation of his liberty interest in his right to free speech, we must consider what process is due. In most cases, "the Constitution requires

some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). In the case of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that a prisoner claiming the negligent deprivation of property without procedural due process must plead that the state's post-deprivation remedies for redressing the wrong are inadequate (This is now known as the "*Parratt* rule."). *See id.* at 535–44, 101 S.Ct. 1908, *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983) (holding that in a § 1983 case "claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate").

The district court in the instant case applied the *Parratt* rule, concluding that Jackson had failed to plead that his available state remedies were inadequate to redress his alleged wrong. Specifically, it held that Jackson could have either (1) contested the actions taken against him before the Civil Service Commission or (2) filed an action in mandamus challenging the City's actions pursuant to Ohio Revised Code § 2506.01. The district court noted that Jackson had in fact filed a mandamus action to contest the validity of his alleged suspension.

■ On appeal, Jackson argues that because both *Parratt* and *Vicory* involved property-based procedural due process claims, the analysis set forth in these cases does not apply to liberty-based claims such as those alleged in the present case. This argument, however, has been expressly refuted by the Supreme Court's ruling that "the fact that a deprivation of liberty is involved ... does not automatically preclude application of the *Parratt* rule." *Zinermon*, 494 U.S. at 132, 110 S.Ct. 975.

■ Jackson further argues that he could not have unilaterally appealed his alleged suspension to the Civil Service Commission because (1) the Commission hearing could not have taken place unless and until Rice filed charges against Jackson, and (2) the Charter calls for Rice to initiate any hearings at the Commission. He relies on § 107 of the Columbus City Charter, which provides in pertinent part as follows:

If the [Chief of Police] be so suspended[,] the director of safety shall forthwith certify the fact, together with the cause of such suspension, to the civil service commission, who within five days from the date of the receipt of such notice shall proceed to hear such charges and render judgment thereon. . . .

This charter provision, however, is not the only legal source governing Jackson's right to appeal the City's actions to the Commission. Rather, Rule XIII(E) of the Civil Service Commission's own rules allows a classified employee to appeal a suspension: "Except as otherwise provided ..., an employee who is suspended, reduced in rank, position or compensation or discharged, may appeal such a decision, order or action to the Commission." Although only the Director of Public Safety can discipline the Chief of Police under Charter § 107, every classified employee, including the Chief of Police, is entitled under Rule XIII(E) to a hearing before the Civil Service Commission in the event of a suspension. We find no indication that these two provisions were intended to be mutually exclusive. Jackson's right to a hearing before the Civil Service Commission therefore serves as an adequate state remedy.

■ Finally, Jackson contests whether his ability to file a mandamus action was an adequate state remedy. He filed a mandamus petition in state court on November 1, 1997, requesting the court to order his reinstatement or, in the alternative, to order Rice to send the charges

against him to the Civil Service Commission. Once charges were filed against him with the Commission on November 29, 1996, Jackson voluntarily dismissed his petition. He now argues that an action in mandamus was not an adequate remedy because his petition became moot in light of the formal filing of charges.

We find this argument unpersuasive for two reasons. First, his mandamus petition requested that the court order Jackson's reinstatement as the Chief of Police. Even after the November 29, 1996 charges were filed against Jackson, the requested order, if granted, would have been an adequate remedy. Second, the court granted Jackson the opportunity to show cause why the case should not be dismissed after Rice filed formal charges against him. Jackson chose not to respond.

We therefore find that Jackson had adequate state remedies to redress his alleged wrong. For this reason, we affirm the district court's dismissal of his procedural due process claim.

### 4. Substantive due process—protected liberty interest in his good name and reputation

 Jackson concedes on appeal that he did not plead an independent substantive due process claim, and that his claims are more appropriately analyzed under other provisions of the Constitution. He contends, however, that he pled a protected interest in his good name and reputation. This court has held that a person has a protected liberty interest "in his reputation, good name, honor, and integrity, as well as in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy." *Joelson v. United States,* 86 F.3d 1413, 1420 (6th Cir.1996) (internal citation and quotation marks omitted). "To establish a deprivation of a protected liberty interest in the employment context, a plaintiff must demonstrate stigmatizing governmental action which so negatively affects his or her reputation that it effec-

tively forecloses the opportunity to practice a chosen profession." *Id.* He or she must also allege that the stigmatizing information was publicly disclosed. *See id.*

The district court correctly held that Jackson's complaint failed to meet this pleading standard. His bare allegation that the acts of the City resulted in "irreparable harm and injury" is unsupported by the facts. No facts are pleaded that show that Jackson's status as the Chief of Police has been altered in any way, or that he has made any efforts to obtain comparable employment elsewhere. Despite his argument that his reputational injury has "effectively foreclose[d] the opportunity to practice a chosen profession," Jackson never relinquished his position as the Chief of Police during the pendency of the investigation and still retains that position.

For these reasons, we affirm the district court's dismissal of Jackson's substantive due process claim.

### 5. Equal protection—racial discrimination

 Jackson alleges that he was discriminated against on the basis of race through the imposition of the gag and banishment orders and other acts of the City which were allegedly designed to force him from his position as the Chief of Police, all in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Equal Protection Clause. To survive the City's motion to dismiss, Jackson's complaint must include factual allegations that provide direct evidence of a discriminatory motive or that support each element of a *prima facie* case under the criteria set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a claim of racial discrimination under *McDonnell Douglas,* he must show that he (1) is a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment decision, and (4) was treated differently than similarly situated non-minorities.

*See Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1166 (6th Cir.1996).

■ The district court correctly found that Jackson did not allege direct evidence of racial discrimination, stating that "[t]he testimony suggests that Rice was concerned that plaintiff would attempt to undermine and jeopardize the integrity of the investigation by making unwarranted accusations of racism.... These statements do not patently demonstrate the existence of unlawful discrimination." On the other hand, the court held that the *McDonnell Douglas* framework applies to employment discrimination claims brought under §§ 1981 and 1983 against government employers. *See, e.g., Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (applying the *McDonnell Douglas* framework to a discrimination claim brought under §§ 1981 and 1983). We fully agree with and adopt the district court's well-reasoned decision as to these points.

With regard to the *McDonnell Douglas* standard, the district court held that Jackson failed to allege that he suffered an adverse employment action (the third prong) and also failed to establish that similarly situated non-minority employees were treated differently (the fourth prong). Jackson has contested both of these issues on appeal. To sufficiently allege an adverse employment action, this court has held that the plaintiff must show a "materially adverse change in the terms of ... employment, [such as] termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities...." *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885–86 (6th Cir.1996) (internal quotation marks and citations omitted).

■ Despite Jackson's claims of adverse action, the October, 1996 letters attached to his complaint do not contain any evidence suggesting that he was subjected to a termination of employment, a change in salary, demotion, loss of benefits, decreased work hours, or significantly diminished material responsibilities. We thus agree with the district court's conclusion that Jackson has not alleged that he suffered an adverse employment action. *See Dobbs–Weinstein v. Vanderbilt Univ.,* 185 F.3d 542, 545–46 (6th Cir.1999) (holding that a professor had failed to establish that she suffered an adverse employment action based on the dean's refusal to recommend her tenure when she successfully protested the action, eventually received tenure, and therefore suffered no "final or lasting harm").

■ Jackson also argues that he adequately pled the fourth prong of the *McDonnell Douglas* framework by showing that he was replaced by a person outside of the protected class. *See Mitchell,* 964 F.2d at 582. This court has held, however, that an employee is not "replaced" when his or her former duties are redistributed among the remaining employees. *See Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir.1992). In this case, the Deputy Chief of Police, a white officer, served as the Acting Chief of Police for four days over a long weekend. We find that a four-day assumption of Jackson's duties by an existing officer is insufficient to constitute a replacement.

■ Jackson further contends that the complaint alleges that he was treated differently than similarly situated non-protected employees. Jackson, however, fails to identify any such allegations. His statement that to his knowledge no other Columbus official or citizen has ever been subjected to a gag or banishment order is insufficient. As the district court stated, "[p]laintiff must allege facts showing that non-minority employees who were similarly situated in all respects were treated differently ..., not simply that plaintiff's circumstances were unique."

For all of these reasons, we affirm the district court's dismissal of this claim.

### 6. Conspiracy

After fully setting forth the law regarding conspiracy under § 1985(3), the district court held that Jackson failed to state such a claim because (1) the conspiracy allegations were conclusory, (2) he failed to sufficiently allege any race-based animus on the part of the City, and (3) his claim against Lashutka and Rice was barred by the intracorporate conspiracy doctrine. Rather than restating the district court's analysis in this opinion, we fully agree with and adopt its reasoning as to these points.

 On appeal, Jackson raises two arguments regarding this issue, neither of which we find persuasive. First, he conclusorily states that he in fact alleged a race-based animus. A review of the record, however, does not support such an argument. Even if the district court ultimately concludes that Rice's comment that the gag order was imposed in order to prevent racial unrest justifies the imposition of the gag order, such a comment does not imply that the City's actions against Jackson were based on race.

 Second, Jackson argues that Lashutka and Rice were not protected by the intracorporate conspiracy doctrine because they were acting outside of the scope of their employment and were sued in their individual capacities. According to the intracorporate conspiracy doctrine, members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment. *See Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994). Jackson's complaint contains no allegations that Lashutka and Rice were acting outside the scope of their employment, and simply suing an official in his individual capacity does not satisfy this requirement. *See Harris v. Board of Educ.*, 798 F.Supp. 1331, 1346 (S.D.Ohio 1992) ("[S]imply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contem-

plation. The plaintiff must also allege ... that they acted other than in the normal course of their corporate duties.") (internal quotation marks and citation omitted).

For these reasons, we affirm the district court's dismissal of this claim.

### 7. Retaliation

Jackson's last federal cause of action is for alleged retaliation based on the "issuance of the several orders attached to this Complaint and the issuance of the 1997 Report...." He claims that these documents "were undertaken in retaliation for Chief Jackson's expressed intention to exercise rights and privileges guaranteed under the Constitution and laws of the United States and the State of Ohio...."

The district court analyzed Jackson's retaliation claim only under Ohio law, perhaps inadvertently omitting a discussion under federal law because the claim was not separated out by jurisdiction as Jackson did for his other claims. In any event, our analysis of his federal retaliation claim is set forth in Part II.D.4.b. below.

### D. State law claims

#### 1. Claims under the Ohio Constitution

 Jackson's complaint alleges violations of his right to equal protection, his right to petition, his right to free speech, his freedom from unreasonable searches, and his right to due process as guaranteed under the Ohio Constitution. The district court dismissed all of these claims, with the exception of the claim related to the allegedly unreasonable search of Jackson's workplace, based on *Provens v. Stark County Board of Mental Retardation & Developmental Disabilities*, 64 Ohio St.3d 252, 594 N.E.2d 959 (Ohio 1992). In *Provens*, the Ohio Supreme Court held that "public employees do not have a private cause of civil action against their employer to redress alleged violations by their employer of policies imbedded in the Ohio Constitution when it is determined that there are other reasonably satisfactory

remedies provided by statutory enactment and administrative process." *Id.* at 965–66.

■ The district court correctly concluded that statutory and administrative remedies were available to Jackson in the instant case. Jackson could, and in fact did, file a claim alleging racial discrimination and retaliation under § 4112 of the Ohio Revised Code. An administrative remedy under Rule XIII(E) of the Civil Service Commission was also available to contest the City's actions. Moreover, Jackson could, and did, file an action in mandamus pursuant to Ohio Revised Code § 2506.01, challenging his suspension and any restrictions on his rights of free speech and petition.

■ On appeal, Jackson makes three arguments to the contrary, none of which we find persuasive. First, he contends that the gag and banishment orders implicated more than mere employment matters, so that *Provens* is not controlling. Jackson claims that the gag and banishment orders in the instant case allegedly violated his freedom of speech as guaranteed under the Ohio Constitution. The plaintiff in *Provens,* however, relied on the very same freedom of speech provisions of the Ohio Constitution that Jackson invokes, and was unsuccessful. Second, Jackson argues that he asserted equal protection claims that can be sustained under theories other than § 4112 of the Ohio Revised Code. But the *Provens* doctrine applies even though the statutory and administrative remedies vary from remedies that might be available through a civil action, so long as the statutory and administrative remedies are "sufficiently fair and comprehensive." *See id.* at 965. Finally, Jackson contends that he was not able to seek relief under either Rule XIII(E) of the Civil Service Commission or an action in mandamus. As discussed in Part II. C.3.b. above, however, we conclude to the contrary. The district court therefore was correct in dismissing the majority of Jackson's claims brought under the Ohio Constitution.

■ The only claim raised by Jackson under the Ohio Constitution that the district court held was arguably not covered by *Provens* was his claim concerning the search of his workplace. Jackson alleged that this search violated his rights under the Ohio Constitution, which provides as follows:

The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.

OHIO CONST., art. 1, § 14.

Jackson argues that warrantless searches are presumptively unreasonable. *See Horton v. California,* 496 U.S. 128, 133 & n. 4, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Although this is clearly the general rule under the United States Constitution, the Supreme Court held in *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), that a workplace search by a government employer to investigate work-related misconduct is not subject to the probable cause and warrant requirements of the Fourth Amendment. Rather, such a search is legal so long as it is reasonable under all of the circumstances. *See id.* at 725–26, 107 S.Ct. 1492. According to the Court, a workplace search is "reasonable" if it is "justified in its inception" and is "reasonably related in scope to the circumstances" that prompted the search. *See id.* at 726, 107 S.Ct. 1492.

■ The district court, finding no indication that the Ohio courts would give employees any greater protection under the Ohio Constitution against workplace searches than that provided by the Supreme Court in *Ortega,* held that Jackson has failed to state a claim regarding the search of his office. Jackson alleged that

his office was sealed off, his professional and personal belongings were searched, and the locks on his office were changed. But these facts do not establish that the search was unreasonable, unjustified in its inception, or unreasonably related in scope to the circumstances that prompted it. Jackson responds by claiming that he was unable to make these allegations due to his lack of information regarding the search. As the plaintiff, however, he had the burden of alleging sufficient facts to support a claim when faced with a Rule 12(b)(6) motion. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir.1997) ("A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."). For these reasons, we affirm the district court's dismissal of this claim.

### 2. Intentional infliction of emotional distress

 Jackson also seeks damages for the intentional infliction of emotional distress, alleging that he suffered "extreme and severe emotional distress and outrage." After setting forth the elements of this tort, the district court held that (1) "an employer is not liable for an employee's emotional distress if it does no more than insist on its legal rights in a permissible way" and (2) "even assuming that the allegations in the complaint are sufficient to allege extreme and outrageous conduct on the part of the defendants, [Jackson] has failed to set forth facts sufficient to allege that he sustained a severe and debilitating mental or emotional injury as a result of the defendants' actions." We agree with the district court's findings and conclusions regarding this claim. Jackson's complaint reveals that he did not use any sick time during his absence from the police department and that, at the conclusion of the investigation, he retained his position as the Chief of Police. Because he failed to provide any factual support or specific allegations of harm in support of this claim,

the district court did not err in dismissing the same.

### 3. Invasion of privacy

 Jackson claims that the City's actions constituted an invasion of privacy under Ohio law. Ohio law recognizes a cause of action for invasion of privacy in cases of (1) "the unwarranted appropriation or exploitation of one's personality," (2) "the publicizing of one's private affairs with which the public has no legitimate concern," or (3) "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Sustin v. Fee*, 69 Ohio St.2d 143, 431 N.E.2d 992, 993 (Ohio 1982). The district court held that Jackson failed to state a claim under any of these theories.

 Jackson concedes on appeal that his privacy claim is solely for wrongful intrusion. This theory limits liability to intentional intrusions that would be "highly offensive to a reasonable person." *Id.* at 994. In addition, if the party who is alleged to have wrongfully invaded another's privacy is a public official who is acting within the scope of his or her official duties, the plaintiff must allege "that the public official acted in bad faith or with a corrupt motive before liability can attach." *Id.*

 Jackson alleges in his complaint that a "secret team" investigated his professional and personal life and that he was "never told what allegations this team was investigating, to whom they were speaking, what information was being collected, who the investigators were, or anything else about the probe." Although he may not have been informed about the extent of the City's investigation, the facts as alleged are wholly insufficient to state a claim that the City, in conducting an internal investigation of abuse and corruption, acted in a way highly offensive to a reasonable person. Jackson also failed to allege that

either Lashutka or Rice was acting outside of the scope of his employment, and the facts as alleged do not support a finding that they were acting in bad faith or with a corrupt motive. For these reasons, we affirm the district court's dismissal of this claim.

4. *Racial discrimination and retaliation under Ohio Revised Code § 4112*

a. Racial discrimination

▮ Federal case law interpreting claims of racial discrimination is generally applicable to claims under Ohio Revised Code § 4112. *See Little Forest Med. Center v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 575 N.E.2d 1164, 1167 (Ohio 1991). Because we find that Jackson's allegations of racial discrimination under § 1981, § 1983, and the Equal Protection Clause are deficient (see discussion in Part II.B.5. above), we hold that his allegations of discrimination are insufficient under Ohio's law as well.

b. Retaliation

The district court also held that Jackson failed to state a claim of retaliation under Ohio Revised Code § 4112.02(I). Jackson does not contest this conclusion on appeal. Rather, he claims that the district court improperly analyzed his retaliation claim exclusively under Ohio law when his claim is also premised on federal law. Jackson's complaint states in pertinent part as follows:

The issuance of the several orders attached to this Complaint and the issuance of the 1997 Report, were undertaken in retaliation for Chief Jackson's expressed intention to exercise rights and privileges guaranteed under the Constitution and laws of the United States and the State of Ohio ... all of which violates the redress clause of the First Amendment and Fourteenth Amendment and Ohio Revised Code Chapter 4112.

▮ Jackson's contention that the district court failed to address this claim under federal law appears to be correct. But because "[a] decision below must be affirmed if correct for any reason, including a reason not considered by the lower court," we can affirm the district court's dismissal of this claim if we conclude that Jackson failed to state a federal claim of retaliation. *See Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985).

▮ Claims of retaliation against a plaintiff's exercise of activity allegedly protected by the First Amendment are evaluated pursuant to a three-step test:

(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998).

Jackson specifically alleges that the issuance of the 1997 report was undertaken in retaliation for his expressed intention to assert legal claims against the City. Whether his intended speech constitutes "constitutionally protected activity" depends on whether it relates to a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (see the discussion in Part II.C.1.a. above). If Jackson threatened to file a lawsuit against the City solely for the purpose of advancing his own career, this would constitute private speech and would not merit First Amendment protection. *See Rice v. Ohio Dep't of Transp.*, 887 F.2d 716, 720–21 (6th Cir.1989), *rev'd on other grounds*, 497 U.S. 1001, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990). If, on the other hand, his threat of litigation served to expose matters of public concern, such

as the alleged discriminatory practices of the City, such speech would constitute public speech and merit constitutional protection. *See id.*

■ Even assuming that Jackson's intended speech was constitutionally protected, however, he failed to sufficiently allege that the information contained in the 1997 report caused him to suffer any significant injury. This court has held that injury based on embarrassment, humiliation, and emotional distress is sufficient to be actionable under § 1983. *See Bloch,* 156 F.3d at 679–80. But Jackson's complaint does not allege that he suffered any concrete injuries as a result of the publication of the report or that the report had any effect on his position as the Chief of Police. Finally, Jackson has only made bare allegations that the publication of the report was motivated in part as a response to his intended speech. The report was in fact published six months after Jackson informed the City of his intentions to file a lawsuit. This lapse of time makes it unlikely that the report was published in response to his intended speech.

For all of these reasons, we affirm the district court's dismissal of Jackson's retaliation claim.

### 5. Defamation

Jackson also alleges that the City defamed him "by the malicious publication of false and defamatory statements made from October 10, 1996 through the time of issuance of the 1997 report." The amended complaint, however, does not specifically refer to any published statements made by the City regarding Jackson other than the publication of the report.

■ Under Ohio law, proof of a defamation claim requires a showing of (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence by the publisher, and (4) either the actionability of the statements regardless of special harm or the existence

of special harm caused by the publication. *See Piro v. Franklin Township,* 102 Ohio App.3d 130, 656 N.E.2d 1035, 1043 (Ohio Ct.App.1995). Where a public official such as Jackson claims that defamatory statements were published concerning him, he must also prove by clear and convincing evidence that the statements were made with actual malice. *See Scott v. News–Herald,* 25 Ohio St.3d 243, 496 N.E.2d 699, 704 (Ohio 1986).

The district court denied the City's motion to dismiss this claim, stating that "the question of privilege is usually not properly raised in a Rule 12(b)(6) motion unless the defense is obvious from the face of the complaint." Because neither the report itself nor the details surrounding its preparation and release were before the district court, there was no way to determine whether the report was made under circumstances that would support an absolute privilege. (No cross-appeal was filed by the City from this ruling.)

Given that the district court dismissed all of Jackson's other claims, it declined to exercise supplemental jurisdiction over this remaining state claim. *See* 28 U.S.C. § 1367(c)(3). Because we hold that Jackson has sufficiently alleged that the City violated his right to freedom of speech under the First Amendment and thus reverse the district court's dismissal of this claim, we remand his state defamation claim to the district court as well for further consideration.

### E. Expungement of the 1997 report

■ Finally, Jackson argues "the 1997 Report was illegally issued without lawful authority in that it contains defamatory matter which does now and will in the future restrict Chief Jackson's freedoms of speech and association." He therefore requests that the court order the destruction of the report.

Even though we hold that Jackson's complaint states a cause of action for the alleged violation of his First Amendment

right to freedom of speech, we decline to order the expungement of the 1997 report. The only case cited by Jackson in support of his request for expungement is *Hammond v. Brown*, 323 F.Supp. 326 (N.D.Ohio 1971). In *Hammond*, the district court ordered the expungement of a report released by the special grand jury investigating the Kent State tragedy. Due to the grand jury's oath of secrecy, as well as the due process and First Amendment rights of the accused, the court concluded that the report was illegally issued. *See id.* at 357–58. No similar policy of secrecy or need to preserve the rights of an accused exists in the instant case. Rather, Jackson is seeking the expungement of the very type of document that the Ohio Supreme Court has clearly held to be a public record:

> Ohio law favors disclosure of public records.... Clearly the investigation was conducted and the record compiled to establish the accuracy of the accusations being made against the police chief and to assess the propriety of his conduct.... It was simply a lawful investigation of one public officer by another. As such, the record compiled is a public record as defined in R.C. 149.43(A).

*Barton v. Shupe*, 37 Ohio St.3d 308, 525 N.E.2d 812, 813 (Ohio 1988). For this reason, we affirm the district court's denial of Jackson's request for the expungement of the 1997 report.

### III. CONCLUSION

For all of the reasons stated above, we **REVERSE** the district court's dismissal of Jackson's First Amendment freedom of speech claim and **REMAND** such claim, as well as his claim of defamation under state law, for further proceedings consistent with this opinion. We **AFFIRM** the district court's dismissal of all of his other claims.