Javier H. ARMENGAU,
Plaintiff–Appellee,

v.

Jeffrey Paul CLINE, also known
as J.P. Cline, Defendant–
Appellant.

No. 99–4544.

United States Court of Appeals,
Sixth Circuit.

March 1, 2001.

Before MERRITT, NELSON, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Following his arrest in December 1996 for disorderly conduct after a sheriff's deputy observed him urinating in a parking lot, Plaintiff filed a pro se complaint in the Marion County Court of Common Pleas seeking damages under 42 U.S.C. § 1983 from the arresting officer, a second sheriff's deputy on the scene, the county jailer, the sheriff, and the Marion County Commissioners. Defendants removed the action to federal court, and filed their answer, claiming immunity from suit. Plaintiff did not respond. The individual Defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis of qualified immunity. The district court dismissed all federal claims against the individual Defendants except the Fourth Amendment claim against Defendant Cline, the arresting officer, for arrest without probable cause, concluding that the availability of qualified immunity for Cline turned on disputed issues of fact. Cline timely appealed.

## I.

### A. The Facts as Contained in the Pleadings

In this section 1983 action alleging wrongful arrest, Plaintiff's complaint included no facts describing the events for which he was arrested. Rather, with respect to his Fourth Amendment claim against Deputy Cline, the complaint simply stated:

66. As a result of the allegations herein contained, the Defendants violated the Plaintiff's Civil Rights as guaranteed him by the First Amendment, Fourth Amendment and the Fourteenth Amendment of the United States Constitution:

67. Defendant Cline's selective enforcement and arrest without probable cause violated the Plaintiff's equal protection

rights as guaranteed by the 14th Amendment of the United States Constitution;

68. Defendant Cline's unlawful arrest of the Plaintiff violated Plaintiff's Fourth Amendment Right against unreasonable search and seizure;

\*    \*    \*    \*    \*    \*

70. Defendant Cline's stop and detention of the Plaintiff was unreasonable as of the inception and thereby violated the Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

To the very limited extent that the complaint provided any factual background for its allegations, it stated that: Deputy Cline lacked reasonable suspicion to believe that Plaintiff committed a crime or probable cause to arrest Plaintiff, Plaintiff at no time violated the law, and Deputy Cline–in order to justify the arrest–fabricated a charge of public indecency after taking Plaintiff into custody. Finally, the complaint summarized the state court criminal proceedings following Armengau's arrest, noting that the Ohio Court of Appeals had reversed his conviction, but nowhere incorporated those proceedings by reference.

Answering the complaint, Defendants described the factual background of Plaintiff's suit as follows:

4. These Defendants admit and aver that on December 14, 1996, while on routine patrol, Deputy Cline observed Plaintiff urinating in a public area in close vicinity to a bar, patio and public parking lot; that when Deputy Cline approached Plaintiff he began to laugh; that Plaintiff refused to give his name, was uncooperative and attempted to walk away; and that Plaintiff was then placed under arrest. These Defendants admit that Plaintiff was handcuffed, transported to jail and released on $250 bond.

Accordingly, Defendants maintained that probable cause existed for Plaintiff's arrest, "as confirmed by Plaintiff's own admission as [sic] conviction at trial." Defendants attested to the same history of state court proceedings that Plaintiff identified in his complaint. Further, the individual Defendants claimed qualified immunity from suit and charged that the complaint failed to satisfy this court's heightened pleading standard for claims against governmental actors who assert qualified immunity as a defense. Defendants did not incorporate the state court proceedings by reference.

### B.   The Facts as Ascertained from State Court Proceedings

On December 14, 1996, Marion County Sheriff's Deputy Jeffrey Paul Cline arrested Javier H. Armengau after observing him urinate in public. Reviewing Armengau's state court conviction, the Ohio Court of Appeals summarized the events for which Deputy Cline arrested Armengau:

Here, the arresting officer testified that Appellant's actions were occurring after 1:00 a.m. approximately 83 feet from the entranceway of the bar. However, Appellant was blocked from view of the doorway by a wooden fence. Appellant was standing between the fence and a parked car with his long coat hanging down around him. He said he chose the most deserted place available to him under the circumstances. The location chosen was a dark portion of the lot out of sight of the bar entrance. The officer testified that the only reason he noticed what Appellant was doing was because he aimed his high beams and his spotlight at Appellant. These lighting devices permitted the officer to see more than any causal passerby would have an opportunity to observe. In addition, Ap-

pellant gave uncontroverted testimony that the situation was an emergency and that the line for the restroom inside the bar was so long that Appellant would have had to wait at least ten minutes to use that facility. The only other testimony in the record as to the length of the line for the men's room supports this estimate. Appellant also provided uncontested medical evidence that he was being treated for a medical condition that created frequent urgent needs to urinate.

*State v. Armengau,* No. 9–97–87, 1998 WL 275049, at *1 (Ohio Ct.App. May 29, 1998). In addition, testimony from Armengau's criminal trial indicates that Deputy Cline and Armengau agree that he faced the fence with his back toward the parking lot and that his coat reached his ankles.

Deputy Cline was not responding to a complaint about Armengau's actions when he spotted Armengau in the parking lot. Deputy Cline approached Armengau as he zipped up his pants, and according to Armengau demanded, "What do you think you're doing? What do you think this is, a f****** bathroom?" Upon request, Armengau provided Deputy Cline with his name, social security number, and date of birth, although he spelled his full name one letter at a time, taking a ten second pause after each letter. He also made a snide remark to Deputy Cline. According to Deputy Cline, Armengau was uncooperative and refused to provide his name, though he did provide his social security number and date of birth. Finally, after repeatedly asking whether he was under arrest and being told he was not, Armengau began walking toward the parking lot, at which point Deputy Cline arrested him. Deputy Cline does not dispute that he arrested Armengau as he walked away from him, but did so, he says, for urinating in public.

Initially, Armengau was charged with one count of indecent exposure. *Armengau,* 1998 WL 275049, at *1. Later, this count was dropped and a disorderly conduct charge substituted. *Id.* In November 1997, a municipal court in Marion County found Armengau guilty and sentenced him to a fine of $50 plus court costs. In pronouncing judgment, the judge noted that Deputy Cline and Armengau disputed whether Armengau had concealed himself and declared that the case turned on an assessment of credibility. An intermediate state appellate court set aside the conviction. *Id.* At the time of his arrest, Armengau was completing law school and was registered to take the February 1998 bar exam in Ohio. As a result of his arrest, he failed to obtain clearance through the Ohio Supreme Court's character and fitness review process to sit for the exam, though he has since been admitted to practice in Ohio.

### C. The Magistrate's Report and the District Court's Order

The Defendants' motions to dismiss were referred to a magistrate judge, who included in the Report and Recommendation, as part of the factual background for the motions, testimony Armengau had given at his criminal trial. The Defendants objected to the magistrate's Report, both because the magistrate had relied on matters outside the complaint and because Plaintiff's complaint failed to satisfy this court's heightened pleading standard for cases in which defendants claim qualified immunity. Plaintiff responded that notice pleading suffices to survive a Rule 12(b)(6) motion, and asserted that his complaint alleged sufficient facts to proceed to discovery.

Reviewing the magistrate's report, the district court stated that "Plaintiff does not provide any of the details of the arrest

in his complaint;" the court then adopted the factual account derived from Armengau's state court appeal of his conviction. The district court made no mention of this court's requirement of a heightened pleading standard for cases in which qualified immunity is invoked as a defense. Addressing Plaintiff's Fourth Amendment claim that Deputy Cline lacked probable cause to arrest him, the district court clearly considered material outside the complaint: "From the information contained in the pleadings and the opinion of the Third District Court of Appeals, of which this Court takes judicial notice, it is clear that Cline had probable cause." Believing that Armengau might have an affirmative defense that would vitiate probable cause, however, the court concluded that the information in the pleadings and the state court proceedings created a genuine issue of fact whether probable cause existed at the time Deputy Cline arrested Plaintiff.

## II.

### A. Jurisdiction

■ To the extent that a district court's denial of a claim of qualified immunity turns on an issue of law, the Supreme Court has held that the denial constitutes a final, appealable decision within the meaning of 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The Court has further held that a defendant entitled to invoke qualified immunity may not appeal a district court's denial of summary judgment to the extent that the district court determined that the record presents a genuine issue of fact material to the qualified immunity defense. *Johnson v. Jones*, 515 U.S. 304, 316–17, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Clarifying the scope of interlocutory appellate review, the Court has most recently stated that juris-

diction exists only when the availability of qualified immunity turns on an abstract question of law. *Behrens v. Pelletier*, 516 U.S. 299, 311, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). In other words, an appeal from an order that hinges on nothing more than whether particular conduct occurred is not appealable because that question merges with the merits of a plaintiff's claim. *Id.* at 313, 116 S.Ct. 834.

■ In order for this court to retain jurisdiction over this interlocutory appeal, either there must be no dispute regarding the facts alleged by the plaintiff or the defendant must "concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir.1998). A district court's conclusion that genuine issues of material fact preclude judgment for a defendant claiming qualified immunity does not divest this court of all jurisdiction. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir.1997) (*citing Behrens*, 516 U.S. at 313, 116 S.Ct. 834); *McCloud v. Testa*, 97 F.3d 1536, 1544 (6th Cir.1996). If it did, "a district court could always insulate its qualified immunity rulings from interlocutory review by mouthing the appropriate shibboleth." *Turner*, 119 F.3d at 428. Rather, whether the facts taken in the light most favorable to the plaintiff demonstrate a constitutional violation presents a pure question of law from which a defendant can immediately appeal the denial of qualified immunity. *Id.* We also retain jurisdiction to determine whether a plaintiff's facts show a violation of clearly established law. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir.1999) (en banc) (*quoting Johnson*, 515 U.S. at 311, 115 S.Ct. 2151); *McCloud*, 97 F.3d at 1546. "Only if the undisputed facts or the evidence viewed in the light most favorable to the plaintiff fail to establish a *prima facie* violation of clear constitutional law may we decide that the

defendant is entitled to qualified immunity on an interlocutory appeal." *Berryman,* 150 F.3d at 563.

■ On interlocutory appeal, this court has jurisdiction to determine whether a plaintiff has stated a claim under section 1983. *Vaughn v. United States Small Business Admin.,* 82 F.3d 684, 685 (6th Cir.1996), *modifying* 65 F.3d 1322 (6th Cir. 1995).

### B. Standard of Review

■ We review de novo a district court's denial of qualified immunity. *Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir.1999); *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998). When reviewing the district court's order granting or denying a motion to dismiss pursuant to Rule 12(b)(6), which provides for dismissal for failure to state a claim upon which relief can be granted, we must take as true all factual allegations in the complaint. *Barrett v. Harrington,* 130 F.3d 246, 251 (6th Cir.1997). At this stage, dismissal is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Bloch,* 156 F.3d at 677. We employ a heightened pleading standard when a defendant asserts qualified immunity from suit. *See generally Veney v. Hogan,* 70 F.3d 917 (6th Cir.1995). Because qualified immunity is a defense, a plaintiff need not anticipate it in the complaint. Once a defendant raises the defense, however, the plaintiff must come forward through an amended complaint or a supplemental responsive pleading with additional facts or allegations showing a violation of constitutional rights so clearly established that a reasonable official in defendant's position would know he has an obligation to refrain from the particular conduct. *Id.* at 921. This responsive pleading must include specific, non-conclusory allegations of fact that will allow the district court to determine that these facts, if proved, defeat the claim of qualified immunity. *Id.* at 922. Failure to satisfy the heightened pleading requirement demands dismissal of the complaint. *Id.* at 921.

### C. Review of Plaintiff's Complaint under Veney

■ A motion under Rule 12(b)(6) tests the sufficiency of the plaintiff's claim for relief. 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (2d ed.1990); *cf. Sims v. Mercy Hosp. of Monroe,* 451 F.2d 171, 173 (6th Cir.1971) (per curiam) ("A motion under Rule 12(b)(6) is directed solely to the complaint itself …"). Therefore, when deciding a motion to dismiss a court may consider only matters properly a part of the complaint or pleadings. Once "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED.R.CIV.P. 12(b). Because of the risk of prejudicial surprise arising from the court's treating a motion to dismiss as a motion for summary judgment, Rule 12(b) further requires notice and an opportunity to supplement the record before the court enters summary judgment. *Id.; Briggs v. Ohio Elections Comm'n,* 61 F.3d 487, 493 (6th Cir.1995). Failure to provide the parties with either constitutes reversible error. *Alioto v. Marshall Field's & Co.,* 77 F.3d 934, 936 (7th Cir.1996); *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991). Under certain limited circumstances, however, this notice requirement will not prevent a court from summarily dismissing a complaint even when relying on matters outside the pleadings to do so. *Song v. City of Elyria, Ohio,* 985 F.2d 840, 842 (6th Cir.1993) (holding that a party cannot claim surprise at conversion when

aware that materials outside the pleadings had been submitted to the court); *Fugarino v. Hartford Life & Accident Ins. Co.,* 969 F.2d 178, 182 (6th Cir.1992) (where plaintiffs had ample opportunity to respond to outside evidence submitted with a motion to dismiss they had notice of the possibility of conversion). On appeal, neither party contends that the district court treated Defendants' motions to dismiss as motions under Rule 56(c) for summary judgment, and both the magistrate's report and the district court's opinion analyze the motions under Rule 12(b)(6). Therefore, in disposing of the motions the district court is limited to matters formally contained in the pleadings.

■ We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999). At this preliminary stage in litigation, courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies. *Id.* On the other hand, a certain amount of flexibility attends the determination whether a matter is "outside the pleading." We have held that a court may not consider a criminal indictment without converting a Rule 12(b)(6) motion into a Rule 56(c) motion. *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir.2000). Yet, if extrinsic materials merely "fill in the contours and details" of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment. *Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir.1997).

■ Significantly, none of these cases involved section 1983 claims in which a qualified immunity defense implicated *Veney's* heightened pleading standard. *Veney* itself does not purport to establish a "heightened pleading requirement." Rather, we concluded there that the burdens of trial and discovery, against which qualified immunity is intended to protect public officials, warrant "a zealous adherence" to the ordinary requirement in the rules that a plaintiff plead "circumstances. occurrences, and events" in support of a claim. *Veney,* 70 F.3d at 922 (*citing* FED. R. CIV. P. 8). Even outside the *Veney* context, a court is not required to accept conclusory allegations or unwarranted legal conclusions in ruling on a motion to dismiss. *Jackson,* 194 F.3d at 745.

■ The district court admitted that Armengau included no factual details regarding his arrest in his complaint. Therefore, before this court conducts a qualified immunity analysis, we must address the question of whether a complaint that merely alleges that an officer lacked probable cause to effect an arrest for public urination suffices to overcome the pleading requirement of *Veney.* Ordinarily, the heightened pleading standard would suffice to dispose of a complaint such as Armengau's that fails to state any factual allegations in a non-conclusory fashion. In this case, however, the district court took judicial notice of facts in the state appellate court. So, before conducting the qualified immunity analysis required by this interlocutory appeal, we must first decide whether taking judicial notice of these facts satisfies Plaintiff's pleading burden.

■ Although a district court has discretion to take judicial notice of "adjudicative facts" under Rule 201 of the Federal Rules of Evidence, the court here did not do so properly. Not only did the district court fail to provide *notice* regarding the propriety of taking judicial notice, *Rose,*

203 F.3d at 421, the effect in this case was to run afoul of Rule 12(b)'s admonition against considering matters outside the pleadings. The plain language of Rule 12(b) and this court's application of it requires that when a court looks beyond the pleadings and materials appended to or incorporated in it by reference, the court must convert the motion to one for summary judgment. At this stage of a proceeding, when a defendant interposes a defense of qualified immunity, the plaintiff must come forward with some additional quantum of factual support for his claim. To allow otherwise would eviscerate the substantive protections afforded by qualified immunity, which is a defense against suit, and not merely against standing trial. *Veney*, 70 F.3d at 922 ("The promise of early exit from a lawsuit offered by qualified immunity is an empty promise if plaintiffs are routinely permitted to survive a motion to dismiss with mere 'notice' pleading ."). Compared to the burdens imposed by discovery and trial, the onus on a plaintiff either to include a short statement outlining the factual basis for his claim or to incorporate materials by reference is inconsequential. Once the defendant invokes qualified immunity, it is emphatically not the job of the court to salvage a complaint by taking judicial notice of facts the plaintiff should have included in an amended complaint or a responsive pleading, especially without providing notice to the parties that the court intends to do so.

That Armengau in this case has proceeded pro se does not alter this conclusion. Although we liberally construe the pleadings of a pro se litigant, *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir.1999), Armengau's failure to include any statement of the "circumstances, occurrences, and events" giving rise to the claim leaves us with nothing to construe. Without a statement of "circumstances, occurrences,

and events" the Defendant cannot know the basis on which the Plaintiff relies to sustain his section 1983 action or whether the Plaintiff is alleging different facts in a federal civil proceeding from those adduced in a state court criminal trial and appeal. Moreover, conclusory allegations and bare legal conclusions in a complaint cannot survive even the ordinary standard of pleading embodied in the Federal Rules of Civil Procedure.

Once Defendants here raised qualified immunity as a defense to Armengau's section 1983 action, the district court erred by taking judicial notice of facts enabling Plaintiff's complaint to survive a motion to dismiss rather than dismissing the complaint without prejudice to afford Plaintiff an opportunity to amend his complaint to satisfy *Veney's* heightened pleading requirement. For the reasons that follow, however, we conclude that this error was harmless.

### III.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The right claimed must be more than merely a generalized right; it must be clearly established in a particularized sense so that a reasonable official in the defendant's position knows that his actions violate the right. In short, the illegality of the challenged conduct must be apparent. *Danese v. Asman*, 875 F.2d 1239, 1242 (6th Cir.1989). In evaluating claims of qualified immunity under section 1983, we first determine whether a constitutional violation occurred and only then consider

whether the right violated was clearly established such that a reasonable person would know of it. *Williams,* 186 F.3d at 691. Therefore, we begin by identifying the contours of the substantive right allegedly violated. *County of Sacramento v. Lewis,* 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

■■■■■ Plaintiff's claim of unlawful arrest implicates a right protected by the Fourth Amendment. Accordingly, the claim is analyzed under the Fourth Amendment's standard of "objective reasonableness," which requires a balancing of the nature and quality of the intrusion on an individual's Fourth Amendment rights against countervailing governmental interests. *Graham v. Connor,* 490 U.S. 386, 395–96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Reasonableness under the Fourth Amendment is not capable of precise definition or application; rather, it depends on the precise facts and circumstances in each case and must be judged from the perspective of a reasonable officer on the scene. *Id.* Because the standard is one of "objective reasonableness," it requires an assessment of the officer's actions "in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865.

■■■ A police officer is permitted to make an arrest without a warrant if he has probable cause to believe that the arrestee has committed an offense. *Sandul v. Larion,* 119 F.3d 1250, 1256 (6th Cir. 1997) (*citing Adams v. Williams,* 407 U.S. 143, 148–49, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), *and Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). A section 1983 claimant alleging wrongful arrest must prove that the arresting officer lacked probable cause to believe that the suspect committed the charged crime. *Stemler v. City of Flor-*

*ence,* 126 F.3d 856, 871 (6th Cir.1997). Probable cause means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, [sic] in the circumstances shown that the suspect has committed ... an offense." *Sandul,* 119 F.3d at 1256 (*quoting Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). Without question, the Fourth Amendment's protections against arrests without probable cause are clearly established and were so at the time of Armengau's arrest. *Id.*

■■■■ What was not clearly established at that time was whether an arrest for urinating in public would support a conviction for public indecency under Ohio law. "In order to be clearly established, a question must be decided either by the highest state court in the state where the case arose, by a United States Court of Appeals, or by the Supreme Court." *Robinson v. Bibb,* 840 F.2d 349, 351 (6th Cir. 1988). This standard comports with the objective reasonableness standard, which requires that the unlawfulness of an action in light of preexisting law be apparent. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Ohio's public indecency statute provides that "[n]o person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household: (1)[e]xpose his or her private parts ..." OHIO REV.CODE ANN. § 2907.09(A) (Anderson 1999). Plaintiff correctly notes that the committee comment to this section speaks to the question presented in this case: "Answering an urgent call of nature alfresco would not be an offense if the actor takes reasonable precautions against discovery, although if he or she is imprudent in choosing a site the

347

act might constitute disorderly conduct." Yet, this gloss does not constitute part of the statute and denying qualified immunity on the basis of this language asks law enforcement officers to achieve a level of familiarity with the law demanded only of lawyers litigating matters implicating the statute. Prior to Armengau's arrest in December 1996, neither the Ohio Supreme Court nor any other court identified in our standard under *Robinson* had held that urinating in public would not support an arrest or conviction for public indecency under Ohio law. In fact, by December 1996 only two state appellate courts had reviewed convictions under the Ohio public indecency statute–and they reached conflicting results. *Compare City of Cleveland v. Pugh,* 110 Ohio App.3d 472, 674 N.E.2d 759, 761 (Ohio Ct.App.1996) (reading the committee comment to support an interpretation of the statute as intended only to punish sexual exposures), *with State v. Minton,* No. S–93–25, 1994 WL 39057 (Ohio Ct.App. Feb. 11, 1994) (observing individual urinating in public supports reasonable suspicion that suspect has violated the public indecency statute). Against this legal background, we cannot say that clearly established law in December 1996 vitiated probable cause for an arrest for public urination under Ohio's public indecency statute. We conclude that at the time of Armengau's arrest no reasonable officer could have known that the actions of Deputy Cline giving rise to this suit violated Plaintiff's Fourth Amendment rights. Therefore, Deputy Cline enjoys qualified immunity against this suit.

### IV.

For the foregoing reasons, we hold that Plaintiff has failed to state a claim upon which relief can be granted and that Deputy Cline is entitled to qualified immunity. We reverse the judgment of the district court and remand for entry of judgment dismissing Plaintiff's complaint with prejudice