NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0200n.06

Case No. 25-1442

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

May 04, 2026

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| JANE DOE, | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| TODD W. BLANCHE, Acting U.S. Attorney General, UNITED STATES OF AMERICA, | ) | |
| Defendants - Appellees. | ) | OPINION |
| | ) | |

Before: KETHLEDGE, NALBANDIAN, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Jane Doe[1] alleges that John Smith, her supervisor at the FBI, harassed and assaulted her, leading to her termination. On the government's motion, the district court dismissed Doe's suit for failure to state a claim. We affirm.

## BACKGROUND

At the motion-to-dismiss stage, we credit all well-pled factual allegations in Doe's complaint and draw all reasonable inferences in her favor. *See Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019).

**I. Facts**

Doe is a religious woman who began working for the FBI in 2011. In 2012, Doe met Smith when he started a supervisory role at the FBI field office where they worked. Smith soon began

---

[1] As the parties and district court have done throughout this case, we use the pseudonyms "Jane Doe" and "John Smith," respectively, to describe plaintiff and her alleged harasser.

to assert invasive authority over Doe. For instance, he repeatedly told Doe about his "control" over their workplace and bragged about his extensive connections within FBI headquarters. RE 1, Compl., PageID 12. He also began to demand that Doe meet privately with him for long stretches of time. When Doe divorced her husband in 2012, Smith "represented to her attorney that he was also an attorney and guided the divorce settlement" to "assert control over the outcome." *Id.* at PageID 13.

After Doe's divorce, Smith instructed Doe that FBI policy required her to "disclose to him everything related to her personal life." *Id.* Smith demanded access to Doe's personal and work phones and downloaded personal information and sensitive photographs. Smith would later use this data to blackmail and stalk Doe, often showing up uninvited at her location in his government-issued vehicle.

Smith's coercive behavior escalated. Doe alleges that in April 2013, she was riding in Smith's vehicle after a work event when he pulled the car into a remote location and attempted to kiss her, rolling on top of her while wearing his sidearm, even as she pushed him away and told him to stop. Doe was afraid for her life and feared that Smith would retaliate against her for refusing sexual contact. That same spring, Smith accosted Doe late at night at her family home. He had tracked her location and, afraid that Doe was reconciling with her ex-husband, drove to the home at over 110 miles per hour using the lights and sirens on his FBI vehicle. When he arrived, Smith threatened to tell Doe's ex-husband that he and Doe were having an affair. After Smith left, Doe attempted to commit suicide.

Doe alleges that from there, Smith's physical assaults and psychological manipulation became even more severe. He sexually assaulted her and repeatedly threatened to tell her family that they were having an affair.

In July 2013, Smith referred Doe to the FBI's Office of the Inspector General ("OIG"), resulting in a years-long criminal investigation for mortgage fraud. Her complaint describes Smith's referral and the investigation as entirely "manufactured" and "lack[ing] merit." *Id.* at PageID 19-20. Doe believes that Smith initiated the investigation because he knew that she would become totally "dependent on him" if the FBI fired her. *Id.* at PageID 18. Over time, the investigation seems to have uncovered Smith and Doe's inappropriate relationship, and the OIG interviewed Smith and Doe about their interpersonal conduct. Doe alleges that Smith admitted to FBI policy violations like "soliciting an inappropriate relationship with . . . a subordinate" during the investigation but otherwise used the OIG process as an excuse to "assert additional control" over Doe without facing consequences himself. *Id.* at PageID 19-20. Doe also criticizes the way the OIG conducted its investigation; for example, only male FBI agents interviewed Doe, and she believes that they were not properly trained to investigate a trauma victim.

In 2013, the FBI transferred Smith to a field office in another state, where he no longer supervised Doe. Doe maintains that Smith's abuse continued from afar and that even after his move, he tried to force her to marry him. Although Doe filed informal EEO complaints against the FBI in 2011 and Smith in 2015, she did not "proceed with a formal complaint" in either instance due to "physical and mental threats" from Smith. *Id.* at PageID 6. Doe also feared Smith's continuing control over staff in her FBI field office, as he reminded her repeatedly that he did not become a senior FBI official "by just being nice." *Id.* at PageID 19 (citation modified). Smith retired from the FBI in 2016.

## II.       Procedural history

### A.       Doe's first complaint

Based on OIG's investigation into Doe, the FBI's Office of Professional Responsibility ("OPR") recommended her for dismissal on January 26, 2018, and human resources suspended her indefinitely.  On March 12, 2018, Doe contacted EEO to initiate an informal complaint.  The complaint alleged that Doe had been subjected to a hostile work environment including sexual and non-sexual harassment; discrimination based on her national origin, gender, religion, and parental status; and reprisal based on her earlier informal EEO contacts.

Pursuant to EEO procedure, Doe submitted a formal complaint on May 31, 2018. Meanwhile, OPR formally terminated Doe's employment on September 18, 2018.  The bureau alleged that Doe had violated FBI policy by "participating in a conspiracy to commit mortgage fraud," lacking "candor" regarding certain mortgage transactions and, separately, lacking "candor" regarding her relationship with Smith.  *Id.* at PageID 21.  Reviewing the decision, the FBI's Disciplinary Review Board ("DRB") reversed OPR's mortgage fraud findings but affirmed Doe's termination due to her lack of candor about Smith.  Doe, for her part, concedes that she was not fully forthcoming during her OIG interviews.  But she argues that her lack of candor was justified because of her trauma at Smith's hands; because her OIG interviews were conducted by two white men with no apparent cultural competency or assault-victim training; and because Smith threatened to kill himself if Doe did not tell the FBI that the relationship had been consensual.

A short time later, on November 28, 2018, the EEO accepted for investigation Doe's claims that her termination from the FBI was discriminatory and retaliatory but dismissed her other claims as untimely.  The EEO also informed Doe that DOJ policy permitted her to raise her claim of discrimination based on parental status before an Administrative Law Judge ("ALJ"), as that claim

sounded in agency policy and not federal law. Finally, the agency informed Doe of her right to file a civil complaint in federal court within 90 days of a final agency action or, if the agency failed to act, after 180 days.

### B.      Doe's second complaint and first civil case

Doe filed a second formal complaint in April 2020, alleging that her termination was "discriminatory and in retaliation" for her earlier complaints. RE 29-8, Second Formal Compl., PageID 674-75. On December 11, 2020, Doe withdrew her first administrative case because she had filed a civil action in the United States District Court for the District of Columbia ("D.D.C."). An ALJ dismissed Doe's first administrative complaint (the one she filed in May 2018) but did not specify that the dismissal constituted a final agency action. The EEO also promptly dismissed Doe's second formal complaint (the one she filed in April 2020) because of her pending civil action in the D.D.C. The EEO expressly stated that its dismissal of the second complaint was the final agency decision pursuant to 29 C.F.R. § 1614.110.

Doe's D.D.C. case did not proceed smoothly. Doe moved to amend her complaint multiple times, but the district judge granted the government's motions for Doe to submit revised statements, finding that Doe's complaint was "woefully inadequate" because it failed to connect Doe's legal claims to relevant facts. No. 20-03553 (D.D.C.), ECF No. 61, Order, at 1-2. The court ordered new pleadings and held that any claims accruing before January 26, 2018 were facially time-barred. The district court ultimately dismissed Doe's fourth amended complaint without prejudice, due to her failure to respond to the Attorney General's motion to dismiss.

### C.      Doe's present civil case

Doe then filed her present case in the Eastern District of Michigan. She sued the Attorney General under Title VII of the Civil Rights Act of 1964 for discrimination, harassment, and

retaliation, and she sued Smith individually for a range of state tort claims. Doe alleged that Smith's OIG referral was "motivated by his pursuit of [Doe]," making the "entire DRB process . . . discriminatory because it was based upon input surrounding" Smith's sexual harassment. RE 1, Compl., PageID 23. Doe further argued that the entire investigation lacked evidence; failed to fully consider the record of the relationship between Smith and Doe and glossed over Smith's own improper motives; and violated her procedural rights and FBI policy governing employee relationships. Smith and the Attorney General both moved to dismiss Doe's claims.

The district court dismissed Doe's Title VII claims with prejudice for failure to state a claim and dismissed Doe's tort claims against Smith for lack of subject-matter jurisdiction. Doe now appeals the district court's dismissal of her federal claims. The parties stipulated to the dismissal of Smith as an individual defendant.

## ANALYSIS

### I. Standard of review

We review de novo the grant of a motion to dismiss for failure to state a claim. *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citing Fed. R. Civ. P. 12(b)(6)). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Cooperrider v. Woods*, 127 F.4th 1019, 1027 (6th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009)). The reviewing court should "construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and decide whether there is enough factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation modified). "A court that is ruling on a 12(b)(6) motion may consider materials in addition to the complaint," such as court records and letter decisions of government agencies, "if such materials

are public records or are otherwise appropriate for the taking of judicial notice," without converting the motion into one for summary judgment. *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *see Armengau v. Cline*, 7 F. App'x 336, 343-44 (6th Cir. 2001).

## II.     Failure to state a claim

Doe raises two arguments on appeal. First, she argues that her allegations of harassment in violation of Title VII were sufficient to survive a motion to dismiss.[2] She also argues that she sufficiently pled that the FBI's termination decision was discriminatory and retaliatory. But Doe's complaint did not make the requisite showing on either claim, so we affirm.

### A.     Hostile work environment

Doe argues that her complaint stated a Title VII hostile work environment claim based on Smith's years-long pattern of sexual harassment.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove her hostile work environment claim, Doe must show that "(1) she belonged to a protected group," (2) she "was subject to unwelcome harassment," (3) the "harassment was based on" her membership in a protected group, (4) the harassment "was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (5) the FBI "knew or should have known about the harassment and failed to act." *Waldo v. Consumers Energy Co.*, 726 F.3d 802,

---

[2] On appeal, Doe challenges only the district court's merits resolution of her Title VII claims. Doe does not challenge the court's determination that issue preclusion bars her from raising claims arising before January 26, 2018. We thus assume, without deciding, that the district court properly precluded Doe's claims related to earlier conduct and limit our review to Doe's arguments on appeal, which relate to her Title VII claims accruing on or after January 26, 2018.

813 (6th Cir. 2013) (citation omitted). But those elements of proof constitute "an evidentiary standard, not a pleading requirement." *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). At the motion to dismiss stage, we merely assess whether Doe's complaint contained sufficient factual information from which a court, drawing on its "judicial experience and common sense," could reasonably infer that the FBI subjected Doe to a hostile work environment. *Bruce v. Adams and Reese, LLP*, 168 F.4th 367, 377 (6th Cir. 2026) (citations omitted). The district court held that Doe could not satisfy the third, fourth, or fifth elements of the hostile-work-environment test, and Doe's appeal concerns only those elements.

Doe's claim fails at the third element. "Harassment is based on" a plaintiff's protected category "when it would not have occurred but for the plaintiff's" membership in that category; in other words, the harassing conduct must have occurred *because of* the plaintiff's protected trait. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011). To make that showing, Doe's theory is as follows: Smith harassed her, in part, by referring her to the OIG for mortgage fraud in 2013. That referral resulted in OIG's criminal investigation of Doe, which concluded with her formal termination from the FBI in 2018. As such, the years-long OIG investigation kept her claim about Smith's 2013 referral on life support, such that Smith's harassment truly ended in 2018 with the conclusion of the investigation. In other words, Doe believes that the OIG investigation, initiated by Smith, is a "continuing violation" that permits this court to consider pre-2018 conduct.

Under the continuing violations doctrine, "an ongoing, continuous series of discriminatory acts may be challenged if one of those discriminatory acts occurred within the limitations period." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 408 (6th Cir. 1999). And under Title VII, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim"

is timely, "the entire time period of the hostile environment may be considered." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citation modified). In other words, the plaintiff need only timely file a Title VII charge as to "any act that is part of the hostile work environment." *Id.* at 118.

But there are several problems with Doe's continuing violations theory. First, it is not clear that Doe's termination alone counts as a continuing violation. The Supreme Court has clarified that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* at 115. "The unlawful employment practice therefore cannot be said to occur on any particular day," but instead "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citation modified). Indeed, since *Morgan*, we have recognized that the continuing violation doctrine applies when employees "allege not that they suffered a tangible employment injury (such as a firing or demotion), but that their workplace was so riddled with racial or sexual abuse that it affected the 'terms' or 'conditions' of their employment." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1015 (6th Cir. 2022) (quoting 42 U.S.C. § 2000e-2(a)(1). The doctrine thus does not "render timely a discrete act of discrimination (such as a termination) that is cognizable in its own right apart from any hostile work environment." *Id.* at 1016 (citing *Morgan*, 536 U.S. at 111-13). So Doe must show instead that ongoing conduct, like the OIG investigation, continued *because of* her membership in a protected group.

Doe cannot make that showing. She offers no facts supporting the conclusion that the OIG's investigation, or any other conduct occurring after January 26, 2018, continued "because of" her sex. Her complaint states that the "FBI failed to ensure Plaintiff a hostile-free work environment." RE 1, Compl., PageID 39. As support for that claim, she alleges that the "OIG's

stated reason for the investigation—allegation of mortgage fraud—was pretext for the[ir] discrimination and harassment" and was used "to disguise discrimination on the basis" of her sex, race, religion, national origin, and identity. *Id.* at 20. But Doe provides no factual support for those legal conclusions. Even if the OIG's investigation began with a dishonest tip provided by an alleged harasser, nothing in the complaint supports the inference that the investigation continued *because* of Doe's sex. Doe presents no facts to support an inference that Smith had control over the OIG's investigation, its ultimate resolution, or the DRB's review process. As best we can tell, the process was removed from Smith's hands after his initial referral. And "legal conclusion[s] couched as [] factual allegation[s]" do not satisfy our pleading requirements. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Doe also argues that Smith continued to harass her after his retirement from the FBI by contacting her family and religious leader. But as Smith was no longer employed by the FBI at that time, Doe cannot hold the Attorney General liable for Smith's private conduct. *See Bruce*, 168 F.4th at 377-78.

In sum, Doe's factual allegations do not permit an inference that the OIG's investigation against her continued because of her sex, so her hostile work environment claim fails at the third prong. And because each hostile work environment element is "necessary," we need not reach the fourth and fifth elements of her claim. *Leath v. Collins*, No. 25-1408, 2026 WL 228827, at *4 (6th Cir. Jan. 28, 2026) (citation omitted).

B.      **Discrimination and retaliation**

Doe next argues that she properly pled that the FBI's decision to terminate her was discriminatory and retaliatory under Title VII. Doe does not contest the district court's conclusion

that her only timely discrimination and retaliation claims relate to her termination. So Doe's complaint must allege sufficient factual information for a court to infer that her termination was based on the FBI's discriminatory or retaliatory intent. Doe cannot make that showing.

Doe correctly explains that she can ultimately prove her discrimination claim "using either direct or circumstantial evidence." CA6 R. 63, Appellant Br., at 12. But "at the pleading stage, [Doe] need not commit to—or even identify—the theory [s]he wants to rely on." *Mustafa v. Ford Motor Co.*, No. 24-1763, 2025 WL 2720988, at *2 (6th Cir. Sept. 24, 2025) (citing *Serrano v. Cintas Corp.*, 699 F.3d 884, 898 (6th Cir. 2012)). As with her hostile work environment allegations, Doe's complaint must "allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that" the FBI terminated Doe "*because of* her race, color, religion, sex, or national origin." *Keys*, 684 F.3d at 610 (citation modified).

Our caselaw provides multiple avenues for Doe to make the requisite showing. For instance, her complaint could allege details about a "specific event" in which she was "treated differently" from colleagues outside of her protected class. *Savel v. MetroHealth Sys.*, 96 F.4th 932, 944 (6th Cir. 2024) (quoting *Keys*, 684 F.3d at 610). Likewise, a complaint that "detailed the events leading up to [plaintiff's] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with [the] termination" would provide sufficient factual content to survive the pleading stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). And in *Keys*, we found that a complaint survived a motion to dismiss where it "detail[ed] several specific events" when the plaintiff was "treated differently than her Caucasian management counterparts," identified "key supervisors and other relevant persons by race and either name or company title," and provided facts suggesting that workers in the plaintiff's

protected category "received specific adverse employment actions notwithstanding satisfactory employment performances." 684 F.4th at 610.

But Doe's complaint does not satisfy even this "easily met" burden. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011) (citation omitted). Doe provides no reason to believe that the FBI's apparently inequitable discipline was based on sex or any other protected category. She alleges that the FBI was aware of her "inappropriate" relationship with Smith throughout the investigation, but "the FBI only disciplined her." CA6 R. 63, Appellant Br., at 14. So, Doe concludes, "the FBI's decision to terminate her was sex based" because "the FBI held her to a higher standard" as a subordinate employee. *Id.* But, as the district court noted, "employee rank is not a protected characteristic" under Title VII. RE 70, Order Granting MTD, PageID 1267; *see* 42 U.S.C. § 2000e-2(a). Nor is there evidence that Smith himself had been referred for an OIG investigation, so Smith and Doe did not face the same disciplinary system. And Smith had retired in 2016, two years before the investigation against Doe concluded. Moreover, Doe does not identify who controlled the FBI's decision to terminate her, comparator evidence, or any other information to allow an inference that the bureau's decision was based on a protected category.

Our recent decision in *Mustafa* provides a helpful comparison. There, the plaintiff's discrimination complaint alleged he was "treated less favorably than similarly situated, non-Middle Eastern, non-Muslim colleagues," via negative performance reviews, false fraud accusations, and being replaced by "someone outside his protected classes." *Mustafa*, 2025 WL 2720988, at *4. We emphasized that, "[c]ritically, Mustafa alleges that the same supervisor . . . was involved in many of these incidents and also played a role in the decision to terminate him," "plausibly connect[ing] the earlier alleged discrete discriminatory acts to the ultimate adverse employment action (termination), suggesting the same discriminatory animus

was at work." *Id.* Doe's complaint lacks that connective tissue. Smith did not participate in the OIG's termination decision, and nothing else in Doe's complaint permits the inference that her membership in protected categories motivated the FBI's termination action. So Doe's discrimination claim cannot survive the Attorney General's motion to dismiss.

Doe's retaliation claim fails for similar reasons. Doe argues that her complaint plausibly alleged that she was terminated in September 2018 because of her May 2018 EEO complaint. She also alleges that the reason the FBI terminated her—lack of candor—is further proof of the bureau's retaliation, because "the FBI's framing of the allegations of misconduct against [Doe] evidence retaliation for her speaking out against [Smith's] sexual harassment." CA6 R. 63, Appellant Br., at 16.

These arguments are unavailing. Retaliation occurs when an employee's protected activity causes the employer to take adverse action against her. *See Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343-44 (6th Cir. 2021). A Title VII plaintiff must plead sufficient facts to "demonstrate that there was a causal connection" between her protected activity and the adverse action. *Jackson*, 999 F.3d at 348-49. And in general, the temporal proximity between a protected action and the alleged retaliation must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (two to five months between the protected activity and the adverse action insufficient to find a causal connection); *Kuhn v. Washtenaw County*, 709 F.3d 612, 628 (6th Cir. 2013) (four months insufficient to find causal connection). *But see Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012) (two-month lapse sufficient to find a causal connection).

Notably, Doe fails to cite a single case supporting the position that the four-month period between her EEO complaint and termination was sufficient to allow an inference of causation. Nor

does Doe's complaint allege that any participant in her OIG investigation had knowledge of her EEO complaint, much less any other facts that could support an inference that her complaint was the *cause* of her termination. Because Doe "has provided no evidence to establish any link between the protected activity and [her] termination several months later," her retaliation claim fails. *Kuhn*, 709 F.3d at 628.

## CONCLUSION

For these reasons, we affirm the district court's dismissal of Doe's claims against the Attorney General.